UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YOSEF ZIEGLER,

                  Petitioner,

  -against-

UNITED STATES OF AMERICA,

                  Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  7/10/2023

Case No. 19-CR-916-1 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Petitioner Yosef Ziegler ("Mr. Ziegler") was sentenced by this Court on June 9, 2021 after pleading guilty to four counts of Bank Robbery, in violation of 18 U.S.C. §§ 2113(a) and (d). (*See* ECF No. 54, "Judgment of Conviction" or "J&C"). He was sentenced to 70 months of incarceration on each count, to be served concurrently, and five years of supervised release. (*Id.*)

On April 21, 2023, Mr. Ziegler, through his counsel, filed a motion for a reduction of sentence 18 U.S.C. § 3582(c)(1)(A) (ECF No. 57), which was fully briefed as of May 26, 2023. Mr. Ziegler makes this motion in order to a request 6-month reduction of his sentence, arguing that though he was sentenced on June 9, 2021, the filing of his J&C did not occur until May 12, 2022, and that as a result, his entry into federal custody was delayed until August 15, 2022. Mr. Ziegler argues that the delay rendered him unable to earn good time credit under the First Step Act. (ECF No. 58 ("Ziegler Mem.") at 1, 13.)

For the reasons discussed below, the Court DENIES Mr. Ziegler's motion without prejudice.

**LEGAL STANDARD**

18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify or reduce the terms of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). A court must find that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i). A court must also consider the factors set forth in section 3553(a) to the extent that they are applicable. *Id.* § 3582(c)(1)(A).

"The authority to define 'extraordinary and compelling reasons' has been granted to the United States Sentencing Commission, which has defined that term at U.S.S.G. § 1B1.13, comment n.11." *Zukerman*, 2020 WL 1659880 at *5 (citing *United States v. Ebbers*, No. 02 Cr. 11443, 2020 WL 91399, at *4-5 (S.D.N.Y. Jan. 8, 2020). "Relevant here, the Commission's policy statement and its corresponding commentary . . . . state that a court may reduce a sentence for 'extraordinary and compelling reasons,' including where the defendant is 'suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" *United States v. Hernandez*, No. 18 Cr. 834-04 (PAE), 2020 WL 1684062, at *2 (S.D.N.Y. Apr. 2, 2020) (quoting U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A)). The defendant must also not be "a danger to the safety of any other person or to the community," and "the reduction must be consistent with [the Commission's] policy statement." *United States v. Ramos*,

2

No. 14 Cr. 484 (LGS), 2020 WL 165812, at *1 (S.D.N.Y. Apr. 7, 2020) (citing U.S.S.G. § 1B1.13(2)-(3)).

The Section 3582(c)(1)(A) analysis requires courts to "consider[] the factors set forth in section 3553(a) to the extent they are applicable." *United States v. Gentille*, No. 19 Cr. 590 (KPF), 2020 WL 1814158, at *4 (S.D.N.Y. Apr. 9, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). The factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (4) the sentencing guidelines; and (5) "the need to provide restitution to any victims of the offense." *Ramos*, 2020 WL 1685812 at *2 (quoting 18 U.S.C. § 3553(a)).

## DISCUSSION

### I.     Exhaustion

By the language of 18 U.S.C. § 3582(c)(1)(A), a defendant must first seek administrative relief, and then may only proceed to court after fully exhausting administrative appeals or the lapse of 30 days from the warden's receipt of the request, whichever is earlier. *United States v. Rivera*, No. 317CR001596VLB, 2020 WL 1909227, at *2 (D. Conn. Apr. 10, 2020). Here, the parties do not dispute that Mr. Ziegler has satisfied the exhaustion requirement. (*See* ECF No. 63 ("Gov't Opp. at 4.); Ziegler Mem. at 5.)

### II.    Extraordinary and Compelling Reasons

Mr. Ziegler argues that there are three reasons, which taken together, satisfy his burden of showing extraordinary and compelling circumstances meriting a sentence reduction: (1) this Court's delay in issuing the J&C deprived Mr. Ziegler of 7-months First Step Act Time Credits ("FTC"), (2) conditions of confinement during COVID, and (3) Mr. Ziegler's efforts towards rehabilitation. (Ziegler Mem. at 1, 7.)

### A. Delayed Entry of J&C

By way of background, under the First Step Act, federal prisoners may earn time towards either transfer to supervised release or pre-release custody by engaging in and completing specified programming. *See* 18 U.S.C. § 3632(d)(4)(C) ("Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release."). A prerequisite for the federal Bureau of Prisons (the "BOP") to designate a federal prisoner to a facility is the entry of judgement. *See* Inmate Security Designation and Custody Classification, the Federal Bureau of Prisons, last updated Sept. 4, 2019, available at, https://www.bop.gov/policy/progstat/5100 008cn.pdf at 17 (DSSC "will ordinarily complete the initial designation within three working days of receiving all the necessary documentation from the U.S. Marshals Service (USMS) and the U.S. Probation Officer (USPO) which includes the following: … Judgment[.]"). Eligible inmates can then earn FSA Time Credits by participating in identified programs, and credits are earned at increments of 10 or 15 days a month. FSA Time Credits are capped at 365 days towards early release to supervised release.

Mr. Ziegler argues that the Court's delay in filing his J&C caused him to be credited only 2-months' worth of FTC instead of 7-month' worth.[1] (*See* Def.'s Mem. at 7–8.) Mr. Ziegler's comes to that conclusion using the following analysis:

- According to his counsel's analysis of 25 randomly selected cases filed on or before January 1, 2019 and closed on or before March 28, 2023, the average time it took the Court to file a J&C was 22.8 days, yet the Court here took 337 days to file Mr. Ziegler's J&C. (*Id.*)

- When Mr. Ziegler was initially assessed by BOP, in October 2022, the "Time Credit Factor" was 15 days off per 30 days of successful programming." (ECF No. 58, Def.'s Exh. A, at 2.)

- Using the 22.8-day average lapse between sentencing and filing the J&C, Mr. Ziegler asks the Court to assume that his J&C would have been filed on or about July 1, 2021, given that he was sentenced on June 9, 2021. Because approximately three months lapsed between the Court's filing of the J&C and Mr. Ziegler's arrival at FCI Otisville, Mr. Ziegler assumes that he likely would have arrived at FCI Otisville on or about October 1, 2021 had the J&C been filed around July 1, 2021. Instead, Mr. Ziegler arrived at FCI Otisville on August 15, 2022 – a lapse of 318 days. (Def's Mem. at 13.)

- Assuming that BOP would have credited 15 days off per 30 days of successful programming, the aforesaid 318-day lapse caused Mr. Ziegler to lose approximately 159 days of earned good time, or about 5.3 months. (*Id.*)

---

[1] Mr. Ziegler points to his BOP documentation, which indicates that 432 days were "Disallowed Pgm Days" for purposes of the FTC assessment; this amount represents the days between his arrival to FCI Otisville (August 15, 2022) and the day of his sentencing (June 9, 2021). (*See* Def.'s Exh. A, at 1).

The Government argues that Mr. Ziegler's calculations are built on a "mountain of assumptions," including the assumption that there would have been no additional delays in designating Mr. Ziegler to a BOP facility or transferring him to that facility, the assumption that BOP would have credited 15 days a month for successful participation in eligible programs before October 2022, and the assumption that Mr. Ziegler would have chosen to participate in the requisite programming from the beginning of his federal custody. (Gov't Opp. at 5.) The Court agrees that Mr. Ziegler's calculations are at the end of the day, speculative, and the Court is wary of an attempt to calculate a sentence reduction based on non-existent facts.

Moreover, while Mr. Ziegler cites to a handful of cases providing examples of sentence reductions granted to Defendants when the Court made unintentional errors, all of the examples provided by Mr. Ziegler relate to errors made with respect to sentencing calculations at the time of sentencing. (*See* Def's Mem. at 8–9.) (citing *United States v. Carlton*, No. 05 CR. 796 (PGG), 2022 WL 17104061 (S.D.N.Y. Nov. 22, 2022); *Reynolds v. United States*, No. 99-CR-520 (NGG), 2022 WL 1444167, at *6 (E.D.N.Y. May 6, 2022); *United States v. Gilley*, No. 04-CR-6152-CJS-2, 2021 WL 5296909, at *9 (W.D.N.Y. Nov. 15, 2021); *United States v. Lopez*, 523 F. Supp. 3d 432, 438 (S.D.N.Y. 2021); *United States v. Chavez-Cuevas*, No. 1:00-CR-00033-BLW, 2021 WL 2168951, at *2 (D. Idaho May 27, 2021); *United States v. Spicer*, No. 3:00CR141TSLFKB-1, 2022 WL 16643098, at *2 (S.D. Miss. Aug. 9, 2022)). Here, Mr. Ziegler is not claiming that there was an error in his sentencing calculation.

The most compelling case that Mr. Ziegler cites to is *United States v. Khan*, where the Court granted a 5-month sentence reduction to account for, *inter alia*, the defendant's inability to earn FTC credits given his immigration status, even though he had demonstrated rehabilitation by completing 35 educational courses. *See United States v. Khan*, No. 18-CR-830 (VSB), 2023 WL

2911021, at *4 (S.D.N.Y. Apr. 11, 2023). However, the Court in *Khan* also considered the fact that the defendant would be sent to Immigration and Custom Enforcement custody once released from BOP custody pending his deportation, and that he did not pose a danger to society because, among other reasons, his conviction did not involve a violent offense. *See id*. at *4. Here, Mr. Ziegler argues that his sentence should be reduced because he could have taken more FTC eligible classes had he been placed in BOP custody earlier—as the Court has indicated, such facts are speculative. In addition, as discussed further below, Mr. Ziegler's conviction was based on a violent crime – bank robberies where he threatened individuals with what appeared to be firearms or bombs. (*See* ECF No. 44 (Final Presentence Report or "PSR") at 3, 5–6, 20–21.) Therefore, the facts in *Khan* are distinguishable from the ones presented herein.

### B. Conditions of Confinement and Rehabilitation

Defendant also argues that the Court should consider reducing his sentence because conditions of confinement have been more difficult during the COVID-19 pandemic. In addition, Defendant argues that the steps he has taken to rehabilitate himself while in custody makes him eligible for a sentence reduction.

Mr. Ziegler argues that his incarceration during COVID has exacerbated his mental health conditions, including his PTSD, anxiety, and depression, which stemmed from having been molested multiple times as a child and subsequent trauma. (Def.'s Mem. at 9 (citing PSR ¶¶ 64–65)). While Mr. Ziegler's mental health conditions are serious, the Court notes that courts in this circuit have granted sentence reductions when individuals had health conditions that increased their risk of severe infection from COVID-19. *See United States v. Kitroser*, No. 15 CR. 19-1 (KPF), 2023 WL 3173513, at *5 (S.D.N.Y. May 1, 2023) ("This Court continues to align itself with those courts that have found "that the risks posed by the pandemic alone do not constitute

extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease."); *see also United States v. Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases); *see also United States v. Vazquez*, No. 13 CR. 869-1 (KPF), 2023 WL 2386607, at *7 (S.D.N.Y. Mar. 6, 2023)( granting sentence reduction where defendant "had multiple episodes of blood in his urine, a renal cyst, an inability to control his blood pressure (for which [defendant] appears at least partly to blame), heart palpitations, breathing problems, a growing lipoma on the back of his neck, and a mass below his sternum."); *United States v. Oquendo*, No. 13 CR. 357-1 (KPF), 2023 WL 199609, at *4 (S.D.N.Y. Jan. 17, 2023) (granting sentence reduction where defendant had kidney issues, hypertension, pre-diabetes, and hepatitis C); *United States v. Colvin*, 451 F. Supp. 3d 237, 241 (D. Conn. 2020) (hypertension and diabetes constituted extraordinary and compelling reasons justifying release). Notably, courts have also denied sentence reductions even where prisoners had conditions putting them at higher risk of COVID-19 infection. *See, e.g., United States v. John*, 2023 WL 2898660, at *1 ("[W]hile acknowledging the seriousness of the Defendant's medical updates, a heart attack does not warrant another reduction in the Defendant's sentence."); *United States v. Olivieri*, No. S2 18 CR. 316 (PAC), 2023 WL 2366859, at *2 (S.D.N.Y. Mar. 6, 2023) (denying compassionate release to prisoner with heart disease who recently underwent heart surgery while in custody).

Here, Mr. Ziegler has not demonstrated that his health conditions put him at a higher risk for contracting COVID-19 such that a sentence reduction is warranted. *See, e.g.*, *United States v. Mateo*, No. 17 CR 305 (NSR), 2021 WL 2480171, at *1 (S.D.N.Y. June 16, 2021) (denying motion for compassionate release where defendant did not demonstrate "extraordinary and compelling

8

reasons" showing that Defendant is at high risk for contracting COVID-19). Therefore, the Court finds that Mr. Ziegler's health conditions do not warrant a reduction of his sentence imposed.

Regarding rehabilitation, the Court finds that Mr. Ziegler's efforts to rehabilitate himself are admirable and encourages him to continue seeking such opportunities. However, as the parties correctly note, rehabilitation alone is typically not a basis for granting a sentence reduction. *See* 28 U.S.C. § 944(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *see also Nwankwo*, No. 12 CR 31(VM), 2020 WL 7335287, at *3 (S.D.N.Y. Dec. 14, 2020) ("Nwankwo's rehabilitative efforts are certainly commendable, but they do not, either alone or in combination with the other circumstances he cites, meet the "extraordinary and compelling" standard."); *United States v. Saleh*, No. 93CR181, 2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020) ("every inmate should strive for a productive institutional record while incarcerated because that is what is expected. Accordingly, because Saleh has failed to demonstrate other 'extraordinary and compelling reasons' warranting a reduced sentence, Saleh cannot rely exclusively on his rehabilitation."), *aff'd sub nom. United States v. Elgabrowny*, No. 20-2254, 2022 WL 1701515 (2d Cir. May 27, 2022)

### III.   18 U.S.C. § 3553(a) Factors

Even if the Court were, in its discretion, to find the existence of extraordinary and compelling reasons, the application of the factors set forth in 18 U.S.C. 3553 counsel against granting a reduction in Mr. Ziegler's sentence.

Mr. Ziegler pled guilty to a serious offense which involved armed robbery of four different banks, in violation of 18 U.S.C. §§ 2113(a). The Court recognizes that Mr. Ziegler only had a criminal history category of I at the time of his sentencing, and also notes his efforts to rehabilitate himself while in prison. Nonetheless, the Court finds that the facts involved – four separate bank

9

robberies over the course of a year where individuals believed they were being threatened by a bomb and/or a weapon – are extremely serious and egregious. (*See* PSR at 3, 5–6, 20–21.) In addition, the Court notes that it had already sentenced Mr. Ziegler to a below-guidelines range of 70 months, even though his guidelines range recommended a sentence between 78 to 97 months' imprisonment. (*See* PSR at 20.) Given the facts surrounding the crimes and the sentence already imposed, the Court finds that the sentence reduction in Mr. Ziegler's motion would not serve the principles of deterrence.

## **CONCLUSION**

For foregoing reasons, Mr. Ziegler's 18 U.S.C. § 3582(c)(1)(A) motion is DENIED without prejudice. The Clerk of Court is directed to terminate the motion at ECF No. 57.

Dated: July 10, 2023                        SO ORDERED:
           White Plains, New York

                                                       NELSON S. ROMÁN
                                                    United States District Judge